UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:22-cr-00159-JMS-TAB-1 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| DAMION ALEXANDER | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☐ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cr-00159-JMS-TAB |
| | ) | |
| DAMION ALEXANDER, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Damion Alexander has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). [Filing No. 90.] For the reasons explained below, his motion is **DENIED**.

**I.**
**BACKGROUND**

On March 20, 2023, Mr. Alexander pled guilty to one count of Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1591(a)(1) and (c). [Filing No. 80.] The offense conduct is summarized as follows:

In April, May, and June of 2021, Minor Victim 1 was 17 years of age.

A.R. [(another individual implicated in the conduct)] was a friend of Minor Victim 1. She was, at all times relevant to the proceedings, over the age of 18.

The defendant, Damion "Dre" Alexander, primarily lived in the Northern District of Indiana. He was, at all times relevant to the conduct in question, 27 years old.

The defendant met Minor Victim 1 online sometime in 2021. Subsequently, he met Minor Victim 1 and A.R. in person during the week of May 9, 2021. After meeting Minor Victim 1 and A.R. in person, and having contact with them for multiple hours, Alexander convinced both Minor Victim 1 and A.R. to travel with him to engage in commercial sex acts. Prior to using Minor Victim 1 to engage in commercial sex acts, Alexander had a reasonable opportunity to observe her.

*Minor Victim 1 Transported:* In May and June of 2021, Alexander transported Minor Victim 1 and A.R. from Fort Wayne, Indiana, to various motels and hotels in the Southern District of Indiana. . . .

Alexander transported Minor Victim 1 and A.R. knowing that Minor Victim 1 and A.R. would be caused to engage in commercial sex acts. Alexander transported Minor Victim 1 knowing or in reckless disregard of the fact that Minor Victim 1 was less than 18 years of age and having had a reasonable opportunity to observe Minor Victim 1. Alexander provided, maintained, and transported Minor Victim 1 and A.R. so that both Minor Victim 1 and A.R. would engage in commercial sex acts that financially benefitted Alexander. Alexander transported Minor Victim 1 to Indianapolis from Fort Wayne, Indiana and had her engage in Commercial Sex Acts. Then he would take her back to Fort Wayne. This happened multiple times between May 15, 2021, and June 2, 2021.

*Use of hotels by Alexander:* The defendant used various motels and hotels in the Southern District of Indiana to maintain and provide[ ] Minor Victim 1 for the purpose of engaging in commercial sex acts, knowing or in reckless disregard of the fact that Minor Victim 1 was, in fact, a minor. . . .

*Commercial Sex Advertisements:* A.R. and Minor Victim 1 both took sexually explicit photos and videos of Minor Victim 1, for the purpose of using the photos and videos in commercial sex advertisements. The defendant used cell phones which were not manufactured in the State of Indiana to receive images and videos from A.R. and Minor Victim 1, including depictions of Minor Victim 1 engaged in sexually explicit conduct. The photos and videos used in online commercial sex ads were designed to attract clients who would "purchase" Minor Victim 1 for the purpose of engaging in commercial sex acts with her. Alexander posted ads featuring Minor Victim 1 and A.R. on online sites . . . .

Officers located commercial sex ads featuring Minor Victim 1 and A.R. The timeframe of the ads featuring both Minor Victim 1 and A.R. was May 15, 2021, through June 2, 2021. Images of Minor Victim 1 and A.R. in various stages of nudity are present on each ad.

The telephone number listed on the ads [was registered to Alexander] for the time period May 15, 2021, through July 3, 2021.

*Commercial Sex Acts Involving Minor Victim 1*: Minor Victim 1 engaged in multiple commercial sex acts for Alexander from at least May 15, 2021, until June 2, 2021. The acts occurred in motel and hotel rooms rented by Alexander and others working with him. Alexander received money from the commercial sex acts involving Minor Victim 1. . . .

Alexander corresponded with the "customers" who would purchase commercial sex acts with Minor Victim 1. He directed Minor Victim 1 as to which sex acts she

3

would perform on the "customer" and/or Alexander directed Minor Victim 1 as to how long the commercial sex transaction would last. He told Minor Victim 1 when to start the "timer" with each client, which monitored the amount of time Minor Victim 1 was to spend with each customer. When Alexander did this, he knew Minor Victim 1 would be caused to engage in commercial sex acts during this time. Alexander directed Minor Victim 1 as to how much money she was to collect with each "customer." . . .

After each transaction, Alexander collected money from Minor Victim 1, including using online applications to transfer money from an online account used by Minor Victim 1 to an online account linked to Alexander's bank account. . . .

Evidence recovered from cell phones, including a cell phone known to be used by Alexander, showed multiple communications between Alexander and Minor Victim 1 in which Alexander inquired as to whether Minor Victim 1 was with the buyer, provided her with information about how to collect money, and told her how much to charge the buyer. . . .

*Undercover commercial sex act arranged:* On or about June 2, 2021, an IMPD detective identified a young-looking female posted on a website known to be utilized to post advertisements for commercial sexual activity. An undercover IMPD detective (UC) responded to the telephone number listed in the advertisement. The UC and the person corresponding with the UC by cell phone made arrangements for the female and the UC to meet at [a hotel in] Indianapolis, in the Southern District of Indiana. The plan was for the UC and the female to engage in a fifteen-minute sexual encounter in exchange for money. The individual that responded to the UC directed the UC to meet the female on the 2nd floor of the [hotel].

*Minor Victim 1 provided to undercover officer for purpose of commercial sex act:* On June 2, 2021, the UC went to the [hotel], and he went to the 2nd floor, as directed. Once on the 2nd floor, the UC was met by Minor Victim 1. Minor Victim 1 led the UC to [the room] and requested payment in the previously agreed amount of $150.00. Once the agreement for a commercial sex act was made, the UC signaled for other on-scene IMPD detectives to come to [the room] to assist. While Minor Victim 1 was in [the room] with the UC, other plain-clothed officers observed Alexander outside of the hotel room. Alexander asked one of the plain clothed officers whether everything in [the room] was okay. At that time, the plain clothed officer identified himself as law enforcement, and Alexander took off running out of the hotel. Minor Victim 1 was taken into custody.

[Filing No.65 at 4-8 (emphases in original).]

Mr. Alexander faced a guideline range of 324 to 405 months of imprisonment. [Filing No. 65 at 20.] The Court sentenced him to 180 months of imprisonment, followed by 15 years of

supervised release. [Filing No. 80.] The Bureau of Prisons ("BOP") currently reports Mr. Alexander's anticipated release date (with good-conduct time included) as February 15, 2035. https://www.bop.gov/inmateloc/ (last visited May 13, 2025).

Mr. Alexander filed a Motion for Compassionate release on January 27, 2025. [Filing No. 90.] He argues that he establishes extraordinary and compelling reasons for compassionate release based on certain family circumstances, including an injured father and sick grandmother, and his rehabilitation and soberness. [Filing No. 90.] The Government opposes the motion on the grounds that Mr. Alexandar did not exhaust his administrative remedies, and in any event, does not establish extraordinary and compelling reasons for his release. [Filing No. 94.] Mr. Alexander filed a reply. [Filing No. 95.] The motion is now ripe for the Court's consideration.

## II.
### DISCUSSION

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet under one exception to this rule, a court may reduce a sentence if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [has waited] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," and if "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1). The exhaustion requirement is mandatory. *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021) ("The statute plainly uses mandatory language" and "'[i]f properly invoked, [the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A)] must be enforced.'") (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 (2017)).

5

The Sentencing Commission has set forth the following considerations when evaluating a request for compassionate release: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement"; and second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(1)(A) and (a)(2). If a court finds that extraordinary and compelling reasons exists and that the defendant is not a danger to the safety of any other person or to the community, it goes on to consider the sentencing factors in 18 U.S.C. § 3553(a), "to the extent that they are applicable." U.S.S.G. § 1B1.13(a).

The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction," *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). On this point, the United States Sentencing Commission recently amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13 (Nov. 2023).

Mr. Alexander's motion does not mention or otherwise indicate that he fully exhausted his administrative rights prior to the filing of his motion. [Filing No. 90.] In its response, the Government asserts that Mr. Alexander "has failed to demonstrate or provide evidence that he presented a request for compassionate release to his warden, that it was not acted upon or rejected and that he has exhausted administrative appeals" and that the Court should therefore deny his

6

motion. [Filing No. 94 at 5.] Mr. Alexander does not address the Government's exhaustion argument in his reply. [Filing No. 95.]

The Government's argument is well-taken. Mr. Alexandar has submitted no evidence that he "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or [waited] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The Seventh Circuit has made clear that a defendant must comply with the instruction set forth in 18 U.S.C. § 3582(c)(1)(A) prior to filing a motion for compassionate release. *Sanford*, 986 F.3d at 782 (affirming denial of defendant's motion for compassionate release because he failed to comply with 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement). Because Mr. Alexander has failed to establish that he complied with 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement, his motion is denied on that basis.

Even if Mr. Alexander had satisfied the exhaustion requirement, his motion would still be denied. Mr. Alexander argues that he establishes an extraordinary and compelling reason for a sentence reduction based on the following circumstances: his father (who lives in Denver, Colorado) is injured, his grandmother is in a Fort Wayne, Indiana nursing home that is not properly caring for her, he has eight children, he is fully rehabilitated and sober, and he has completed certificates while incarcerated. [Filing No. 90.] The Government asserts that none of these reasons equate to an extraordinary and compelling reason that warrants a sentence reduction, especially since Mr. Alexander was already sentenced to a below-guidelines sentence. [Filing No. 94 at 6-9.]

Mr. Alexander's arguments do not support a finding of an extraordinary and compelling reason for a sentence reduction, whether considered alone or in conjunction with any other reason.

7

Although U.S.S.G. § 1B1.13(c) identifies that family circumstances of the defendant may be an extraordinary and compelling reason that warrants a sentence reduction, Mr. Alexander fails to establish that his family circumstances warrant a reduction. First, Mr. Alexander does not explain why his release is necessitated by his family circumstances, that other family members could not care for the individuals he listed, or that his father or grandmother are incapacitated and without another caregiver apart from himself. *Cf.* U.S.S.G. § 1B1.13(c). Additionally, as to his father, Mr. Alexander told the U.S. Probation Officer for the presentence investigation report that "he does not share a close relationship with either of his parents nor do they maintain any regular contact." [Filing No. 65 at 17.] Second, while his rehabilitation and achievement of certificates is commendable, to the extent he relies on this argument as an extraordinary and compelling reason for a sentence reduction, "rehabilitation cannot serve as a stand-alone reason for compassionate release." *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) (quotations and citation omitted).

The Court, in its discretion, finds that Mr. Alexander has not carried his burden to show that there are extraordinary and compelling reasons for his release, whether considered alone or in conjunction with any other reason.

In any event, exhaustion and extraordinary and compelling reasons aside, the Court also finds that Mr. Alexander is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Mr. Alexander was adjudicated multiple times as a juvenile for crimes involving aggressiveness and violence such as battery, and as an adult, has been convicted of several prior misdemeanor and felony offenses, including: knowingly or intentionally operating a motor vehicle without ever receiving a license; both misdemeanor and felony domestic battery; misdemeanor invasion of privacy; misdemeanor

8

possession of marijuana (multiple); and felony unlawful possession of firearms by a domestic batterer. [Filing No. 65 at 10-15.] His criminal history demonstrates a clear and ongoing disregard for the law and his community, underscoring the threat he poses to public safety. This concern is further heightened by the gravity of the underlying offense in this case, which involves sex trafficking of a minor[1]—a crime of exceptional seriousness and moral depravity. These circumstances indicate that Mr. Alexander is a danger to the safety of any other person or to the community, making compassionate release unwarranted.

In sum, the Court finds that Mr. Alexander has failed to exhaust his administrative remedies, which alone defeats his motion, and that in any event, he has not presented extraordinary and compelling reasons to release him, whether considered alone or in conjunction with any other reason, and he is a danger to the safety of any other person or to the community. Given these determinations, the Court need not address whether the sentencing factors listed in 18 U.S.C. § 3553(a) weigh in favor of his release.

### III.
### CONCLUSION

For the reasons stated above, Mr. Alexander's Motion for Compassionate Release, [90], is **DENIED**.

Date: 5/15/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[1] Mr. Alexander highlights in his reply that the government continues to "con[veniently] leave[ ] out the fact that [Minor Victim 1] was 60 days from turning 18." [Filing No. 95 at 1.] This assertion is irrelevant and misguided. A minor is, unequivocally, still a minor. And Mr. Alexander's physical abuse of Minor Victim 1 remains abhorrent and dangerous conduct.

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Damion Alexander
Reg. No. 13103-027
USP Coleman I
U.S. PENITENTIARY
P.O. BOX 1033
COLEMAN, FL 33521